IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL JOHNSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 18-cv-2023-SMY |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter comes before the Court on Petitioner Michael Johnson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 (Doc. 1). For the following reasons, the Petition is **DENIED**.

### Procedural Background

Johnson is a federal prisoner currently incarcerated at FCI-Berlin, within the District of New Hampshire.[1] On July 22, 2015, Johnson was charged with one count of conspiracy to commit sex trafficking of a child and by force, fraud or coercion, in violation of 18 U.S.C. § 1594(c) and three counts of sex trafficking of a child and by force, fraud, or coercion, in violation of 18 U.S.C. § 1591. *U.S. v. Michael Johnson,* Case No. 15-cr-30112-SMY (S.D. Ill. Jul. 22, 2015, Doc. 1). Attorney James Stern represented Johnson from August 13, 2015 until January 6, 2017. *Id.* (Docs. 7, 62).

---

[1] *al-Marri v. Rumsfeld,* 360 F.3d 707, 712 (7th Cir. 2004) (explaining that jurisdiction over a habeas corpus petition is determined when the petition is filed even if an inmate is subsequently transferred).

Johnson Pleaded guilty on March 10, 2016. pursuant to a written plea agreement. *Id*. (Docs. 27, 28). He was sentenced on July 27, 2016 to 360 months on all four counts, to run concurrently. *Id*. (Doc. 37).

Johnson raises the following claims in the instant Petition: (1) ineffective assistance of counsel in that Attorney Stern failed to move for a competency hearing (which if granted, would have resulted in a finding that he was incompetent to plead guilty), pressured him into pleading guilty, and allowed him to be convicted of the charged offenses without him admitting to their factual basis; and (2) that his appellate counsel, Assistant Federal Public Defender ("AFPD") Daniel Hillis, failed to raise ineffective assistance of counsel on appeal (Doc. 1, p. 3).

Based on its review of the filings, the Court concludes that the issues in this case can be resolved on the existing record; an evidentiary hearing is not necessary. *See*, *Cooper v. United States,* 378 F.3d 638, 641-642 (7th Cir. 1987)).

**<u>Standard of Review</u>**

An action brought under 28 U.S.C. § 2255 is an attempt to collaterally attack a sentence outside of the traditional avenue of appeal. Such relief "is available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude, or other fundamental defect that resulted in a complete miscarriage of justice. *Blake v. United States,* 723 F.3d 870, 878 (7th Cir. 2013). Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *Sandoval v. United States,* 574 F.3d 847, 850 (7th Cir. 2009).

**Discussion**

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right encompasses the right to effective assistance of counsel. *Watson v. Anglin,* 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel must show (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984); *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then determine whether Counsel's performance was outside the wide range of professionally competent assistance. *Id.* "The question [to be decided] is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 105 (2011). The Court's review of counsel's performance is "highly deferential. . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

To satisfy the second prong, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The petitioner need not show that Counsel's deficient

performance "more likely than not altered the outcome" – but that the likelihood of a different result was "substantial, not just conceivable." *Harrington,* 562 U.S. at 111-12.

The Court first turns to Petitioner's claim that Attorney Stern failed to move for a competency hearing, which, if granted, would have resulted in a finding that he was incompetent to plead guilty. A defendant is competent to plead guilty if he or she has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,'" and "'a rational as well as factual understanding of the proceedings against him.'" *United States v. Collins*, 949 F.2d 921, 927 (7th Cir. 1991) (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960)).

The Court conducted a change of plea hearing on February 26, 2016 (Doc. 9-1). During colloquy with the Court, Johnson stated the following under oath: He could not read or write but could understand the English language and "comprehend" (Doc. 9-1, p. 3). He understood the nature of the charges against him as a "prostitution ring" (Doc. 9-1, p. 5). He understood the penalties for the charges (*Id.*). He had a sufficient opportunity to review the Plea Agreement before he signed it and understood its terms (Doc. 9-1, pp. 8-9). He understood that the Court was not bound by Plea Agreement, that the sentencing guidelines were advisory, and that the Court could impose any sentenced authorized under the law (Doc. 9-1, pp. 8-10).

After the Assistant United States Attorney detailed the factual basis, Johnson contested some of the facts; that alleged victims were not underage (Doc. 9-1, p. 32). He then expressed confusion as to whether his sentence would run concurrent with a prior unrelated sentence (Doc. 9-1, p. 40). Ultimately, the Court was not satisfied that Johnson fully understood the

Plea Agreement. It declined to accept his plea on that date and continued the hearing. (Doc. 9-1, pp. 43-44)

The Court reconvened the change of plea hearing on March 10, 2016. The Court again questioned Johnson regarding his understanding of the Plea Agreement. This time, he indicated that he understood the Plea Agreement:

> Q. The Plea Agreement in this case was originally signed by you on February 26, 2016, and we talked about that a little bit the last time you were here, but, just for the record, is that in fact your signature on the last page of the Plea Agreement?
> A. Yes, ma'am.
> Q. And we talked about the fact that you have, you have some difficulties with reading and I wanted to make sure, and I believe you indicated to me that in fact Mr. Stern had gone through the Plea Agreement with you in detail, to the point where you felt like you did understand the terms of that agreement; is that correct?
> A. Yes, ma'am.
> Q. And I believe since that time you have had additional chances to go through the terms of the Plea Agreement again with Mr. Stern?
> A. Yes, ma'am.
> Q. Okay. And do – again, do you feel like any questions that you have have been explained to your understanding?
> A. I'm understanding.
> Q. Okay. Do you understand, do you feel like you understand the Plea Agreement?
> A. Yes, ma'am.

(Doc. 9-2, pp. 3-4).

The record does not support Johnson's claim that he was incompetent to enter a guilty plea. Rather, it amply demonstrates that he understood the charges against him; he noted that it was a "prostitution ring" and he contested that the girls involved were underage. He understood the potential penalties associated with the charges and even questioned whether his sentence would run concurrent with a prior sentence as well (Doc. 9-1, p. 40). During the second hearing, he indicated that he had gone through the Plea Agreement again and

understood its terms (Doc. 9-2, p. 4). As such, there is no basis upon which the Court can conclude that Stern's performance was outside the range of professionally competent assistance on this point.

Johnson submitted a Declaration with his Petition herein in which he avers that Stern pressured him into pleading guilty:

> 6. Upon information and belief, James Stern came to visit me once after the February 26th, 2016, but before the March 10th, 2016, hearing.
> 7. James Stern never brought up the plea agreement.
> 8. He told me "the prosecutor wants 20, the judge is going with the prosecutor, this is the best deal your [sic] gonna get."
> 9. Right before the March 10th, 2016, hearing, James Stern met with me while I was in a holding room, he said, "I hope we don't have to go through what we went through last time!."
> 10. James Stern instructed me to "say yes to everything" and he told me "dont embarras [sic] me today!"

(Doc. 1, pp. 18-19).

The Court similarly finds no support in the record for this aspect of Johnson's claim. As previously noted, the Court conducted a careful colloquy with Johnson (under oath) prior to accepting his guilty plea to ensure that he was knowingly and voluntarily choosing to plead guilty. And the attendant circumstances as a whole do not indicate that Johnson's guilty plea was involuntary. When it appeared during the first hearing that Johnson unresolved questions, the Court adjourned the hearing for two weeks to allow him to further consult with Stern. When the hearing reconvened, Johnson unequivocally stated that his plea was voluntary and that he had not been threatened and otherwise subject to duress to plead guilty. The Court will not presume that Johnson was lying under oath. Simply put, his claim is self-serving and unsupported by actual proof.

Johnson's remaining claims lack merit as well. Contrary to Johnson's contention that he was convicted of the charged offenses without admitting to their factual basis, the Plea Agreement specifically sets forth his agreement that he committed acts that satisfied each and every element of the offenses charged (Doc. 9-3). With respect to his claim that his appellate counsel, AFPD Daniel Hillis, failed to raise the aforementioned ineffective assistance of counsel arguments on appeal, as the Seventh Circuit has observed, it "imprudent to present an ineffective-assistance argument on direct appeal." *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). As such, Hillis' failure to do so cannot be found to be outside the range of professionally competent assistance.

## Conclusion

For the foregoing reasons, Johnson's Petition is **DENIED**; this action is **DISMISSED with prejudice**. All pending motions are **TERMINATED** as **MOOT**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335-336 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; *White v. United States*, 745 F.3d 834, 835 (7th Cir. 2014). Under this standard, Johnson must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Johnson has not made a substantial showing that his counsels' representation was ineffective. Nor has he demonstrated that reasonable jurists would disagree with the Court's analysis. Therefore, the Court declines to certify any issues for appeal.

**IT IS SO ORDERED.**

**DATED:** August 3, 2022

**STACI M. YANDLE**
**United States District Judge**